[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
When the parties divorced on May 14, 1998, they agreed to share joint legal custody of their two minor sons, Matthew Nighswander, who was born June 22, 1987, and Tyler Nighswander, who was born November 14, 1990. Within a year, both parties had moved to modify the orders that entered as a result of the agreement as a result of the defendant's April, 1999 decision to relocate to Chico, California to accept a teaching position at the California State University there for the fall semester, 1999.[1]
In January, 2000, after eleven days of trial, the court (Hon. Lynda Munro) denied the defendant's motion and ordered her not to relocate the children to California. The court then modified the judgment, establishing a visitation schedule which resulted in the children CT Page 5283 residing primarily with the plaintiff. In October, 2000, the court (Hon. Lynda Munro) entered further orders designed to deal with the changed circumstance created by the defendant's move and to provide the children an opportunity to settle into their new circumstances. In February 2001, the defendant filed a motion to modify custody based on a change in circumstances arising primarily out of her move to California.[2]
The court heard extensive testimony over several days from both parents, the defendant's husband, and the guardian ad litem, who has been involved in the case for five years. In addition, the court heard testimony from Matthew Nighswander, whose parents, by agreement, did not attend. In addition, the court examined voluminous documentary evidence. The court evaluated the demeanor and credibility of the witnesses. Its findings are based upon all of those factors.
It would serve no purpose to find fault with any of the parties or witnesses. The court does not have the authority to make judgments about people in a custody matter, but only to make decisions based upon its factual findings and the law. The boys are entitled to maintain a positive view of both of their parents and both of their step parents, and they are indeed fortunate in all of those relationships. That having been said, the defendant made some errors in judgment concerning the boys between the time of the modification of the custody judgment in January 2000 and the time of this trial, and it is unfortunately necessary to outline them.
The first of these was her failure to communicate appropriately with the boys and, more especially, with their father, concerning her decision to move to California. The defendant was a visiting professor at the University of Connecticut at the time of the divorce. She was a faculty member at the University of New York at New Paltz at the time of the modification, commuting from her home. She was notified in February or March of 2000 that she was not likely to be renewed or granted tenure at New Paltz, although the final decision was not to be made until later that academic year, but was given the opportunity to remain through the 2000-2001 academic year.
The fact that she chose not to remain another year in a job with no future is a credit to her, and the court does not fault her decision to move. Her job at Chico has the promise of a secure future, and her husband also teaches at the university there in a similarly secure position.
However, her communications regarding her decision lead to two possible inferences. Either she was irresponsible, or she was deceitful. On March 1, 2000, the authorities at Chico again confirmed their commitment to her CT Page 5284 as a faculty member, and requested a reply by March 15. She replied on March 14, 2000 that she was not yet able to make a decision. In her letter, she stated that it was her desire to relocate to California with her sons, even though that desire had no basis in reality. On August 9, 2000, she told the plaintiff that she had schedule changes which impacted on her summer vacation schedule with the boys, and indicated that she would be taking them to Chico from August 15 to August 26, 2000. It is a reasonable inference that those schedule changes involved commencing her duties at Chico, which had extended her a written contract on August 9, 2000. She did not tell Mr. Nighswander of her plans to relocate until August 14, 2000, and then stated that she had only made the decision that day. In fact, that communication was untrue. First, she made the decision to accept the Chico job when she received final word from the State University of New York at New Paltz that she would not be given tenure. That occurred on June 15, 2000. Secondly, she told the boys of her decision on August 13, 2000. When she told them, she had just picked them up for a vacation in California that would last two weeks. That was two weeks when they were separated from their primary care giver after hearing what must have been the second most devastating news they had ever received, two weeks when he and they could not communicate regarding this fundamental change in their lives.
Ms. Sudick's assertion that her decision was based primarily on Mr. Nighswander's decision to move the boys' school from Bethany to Hamden is not credible. He first communicated his belief that such a move was desirable on May 30, and she responded on June 13, 2000. Although he did not tell her of his final decision until August 11, there was nothing to prevent more complete communication about this issue between those two dates. Moreover, there was nothing to prevent her from communication with him the potential of her move well before August 14, particularly since she had talked about it with several other people including the children during that time and had consulted with a child psychologist.
Ms. Sudick' second error in judgment since the court's January, 2000 decision regards the communications process she uses with the father of her children. She doesn't give him complete information, and then when he doesn't comply with her wishes, blames him for being unreasonable. A particularly probative example of this behavior relates to a proposed change in her Connecticut visitation in February, 2001. She notified Mr. Nighswander of her wish to change the scheduled dates. He replied that he had made other plans. Only then did she tell him that her proposed change was based on the fact that she was required to be in the area on business during the proposed time, and could not come twice that month. It was a set up, and is a pattern. It is inconceivable that a woman as bright, as well educated, and as accomplished as Barbara Sudick cannot find within her the resources to deal more respectfully and candidly with her CT Page 5285 children's father.[3]
The third error in judgment made by Ms. Sudick since the January, 2000 decision has been her unrelenting pressure on the boys to relocate to California. This pressure has for the most part been applied in what on the surface appears to be a benign, even supportive way, but the result of it has been neither benign nor supportive. The court does not doubt the sincerity of Matthew's desire to live in California with his mother, or his assertion that Tyler shares that wish. However, since at least February, 2001 (and almost certainly earlier), Ms. Sudick has continuously asked them if they still want to come to California. She has done this in part based on her sincere intent that if they had ever said no, she would have terminated these proceedings. But how could they have said no, even if they believed it? The result is that they have been tugged at constantly, and left with the residuary of a conflict they did not create. Matthew's school performance suffered after he transferred to Hamden Middle School, but it was at its worst during the third quarter of his eighth grade year, just after he learned that his mother had again filed a motion to bring him and his brother to California. His school performance suffers most as a direct result of this litigation. Indeed, it appears that he worries that any happiness or success on his part will be seen by his mother as disloyal to her.
Mr. Nighswander is not flashy. He doesn't engage easily, and doesn't share his feelings lightly. But he is solid, secure, predictable, and safe. He is committed to his children, to their interests, activities, and future, and to preserving and extending any relationship with their mother in which she does not diminish him. He is a good father, and he will be able to be a more effective one when Ms. Sudick accepts that fact.
Ms. Sudick's move to California constitutes a substantial change in circumstances, but it is in the best interests of the children that the orders of Judge Munro issued in January and October, 2000 remain in effect, unchanged, and that they remain in the primary care of their father. Accordingly, the defendant's motion for modification of custody is denied.
This decision will be communicated to Matthew and Tyler by their attorney, which shall be accomplished by May 3, 2002. The appeal period will commence on May 3, 2002. Neither parent will communicate any part of this decision to the children during Tyler's minority, except that they are permitted to acknowledge that the decision was made.
As the court, I do not wish to interfere in any way with the discretion of the children's attorney to communicate such information or conclusions CT Page 5286 he sees fit. However, I would ask that, if he thinks it appropriate, he tell them the fotlowing: I admire Matthew for his courage, for the care that he took in preparing to come to court, and for the sincerity of what he said in behalf of his brother and himself. The fact that I could not do what he asked is not meant in any way to be disrespectful to him or to the information he provided. And I think that both boys are lucky to have the parents and step-parents they have. It is now time for them to build their own futures, using all of their family members as resources.
The court has ruled on the custody motion because it is essential that a decision be made as rapidly as possible. The court will retain jurisdiction on the remaining motions and will render further decision in the near future.
Orders will enter accordingly.
BY THE COURT,
GRUENDEL, J.